UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REBECCA CARTHAGE,

    Plaintiff,

v.

SUMPTER TOWNSHIP, et al.,

    Defendants.
                                       /

Case No. 06-10265

Honorable Nancy G. Edmunds

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [19]**

Pending before this Court is Defendants' Motion to Dismiss, or alternatively, for Summary Judgment, filed on September 1, 2006.[1] Plaintiff Rebecca Carthage[2] originally brought suit in Michigan state court against Defendant Jerry Cox, Jr., Defendant Sumpter Township, three John Doe Police Officers employed by Sumpter Township, and Defendant Anthony Lewis (collectively, "Defendants").[3] Defendant Cox

---

[1] Discovery has been taken in this case, so Defendants' motion is properly considered as a motion for summary judgment. In addition, Plaintiff seeks leave to amend the Complaint if the Court finds that it "is legally deficient in any manner," but does not state the grounds on which such leave would be based, (Pl.'s Resp. at 16) nor has Plaintiff attached the proposed amended complaint pursuant to Local Rule 15.1. Therefore, the Court need not consider this issue in its Order.

[2] Plaintiff Tennessee Carthage's claims were voluntarily dismissed without prejudice on August 22, 2006, (Docket No. 18) and counsel now stipulates to the dismissal of Plaintiff Fernando Carthage's claims as well. (Pl.'s Resp. at 1 n.1.)

[3] Defendant John Doe Officers include the two arresting officers, and the officer responsible for supervising arrests once a suspect is brought back to the station. (Compl. ¶¶ 4-6.)

1

was a police officer for Defendant Sumpter Township, and Defendant Lewis was Plaintiff's boyfriend.  Plaintiff's Complaint raised several state law claims as well as the violation of her federal civil rights under the U.S. Constitution, pursuant to 42 U.S.C. § 1983.  After Defendants removed the case to federal court, this Court remanded all state law claims, (Docket No. 14) so the sole cause of action remaining here is Plaintiff's § 1983 civil rights claim.  Since Plaintiff's claims against Defendant Lewis arise under state law, he is no longer a party before this Court following remand.  In addition, Plaintiff stipulated at oral argument to dismiss the claims against the John Doe Officers, leaving Defendant Cox and Defendant Sumpter Township as the only opposing parties in this case.

While Plaintiff's Complaint raised allegations against Defendant Cox of unlawful search and seizure for lack of probable cause, excessive force used during an arrest, and malicious prosecution, Plaintiff is no longer pursuing the latter two claims.  Thus, the only remaining claim is for an unlawful search and seizure.  Plaintiff claims that Defendant Sumpter Township is also liable for this violation due to its failure to properly train officers in appropriate search warrant procedures.

Defendant Cox argues that he did not violate Plaintiff's constitutional rights because the search warrant was supported by probable cause and Plaintiff was properly arrested for further questioning following execution of the search warrant.  Alternatively, Defendant Cox asserts that he is not liable due to qualified immunity.  Finally, Defendant Sumpter Township claims that it is not liable because it did not maintain a policy or custom of depriving individuals of their constitutional rights in this manner.

For the reasons set forth below, the Court GRANTS IN PART Defendants' motion for summary judgment as to Defendant Sumpter Township and DENIES IN PART as to Defendant Cox.

## I.  FACTS

At approximately 9:30 a.m. on September 2, 2005, two armed individuals robbed the Willow Market located in Sumpter Township.  (Pl.'s Resp. at 2.)  Within minutes of the robbery, police officers from Defendant Sumpter Township, including Defendant Cox, arrived on the scene.  The officers reviewed video of the robbery and talked with the store's owner prior to issuing several "be on lookout" ("BOL") dispatches describing the suspects and the getaway vehicle.  (Pl.'s Resp. at 2.)

The first BOL dispatch indicated that a female suspect with red hair and a male suspect with an AK assault rifle left the scene in a white Camaro.  (Pl.'s Resp., Ex. 2.)  The next BOL dispatch provided additional details, including that both suspects were black, and that the getaway vehicle was a white Camaro with a rear spoiler and red hood.  This dispatch described the female suspect as wearing a red jacket, camouflage pants and a Detroit Red Wings mask, and being in possession of a silver handgun.  The male suspect was wearing a Detroit Lions jacket and had an AK 47 assault rifle.  (Pl.'s Resp., Ex. 3.)  Further BOL dispatches indicated that the white Camaro was a 1985-86 Z28 model with a red trunk lid, (Pl.'s Resp., Ex. 4) and, finally, that it might have been a 1996 Camaro.  (Pl.'s Resp., Ex. 5.)  Defendant Cox also testified that witnesses said the female suspect was "of short stature, a little bit heavy-set," and that she was polite during the robbery.  (Cox Dep., Defs.' Mot. for Summ. J. (hereinafter, "Defs.' Mot."), Ex. D at 23, 43.)

Approximately thirty minutes after the robbery, Officer Sielski of the Monroe police department was stationed at the Monroe County Community Credit Union. (Sielski Dep., Defs.' Mot., Ex. G at 8.) The credit union is located fifteen miles away from the Willow Market, which is roughly a twenty two-minute drive. (Pl.'s Resp., Ex. 12.) Officer Sielski had heard Sumpter Township's BOLs about the robbery suspects, and noticed a black male and a black female in a white 1993 Ford van in front of the credit union. (Pl.'s Resp. at 3; Sielski Dep. at 6-7.) These individuals were Plaintiff and Anthony Lewis. Officer Sielski became suspicious because of his recollection that the female robbery suspect was wearing a Detroit Lions jersey, and the individuals looked at the police as they passed in the patrol car. (Sielski Dep. at 9.) Although Plaintiff was wearing a red and white football-style jersey at the time, rather than the Detroit Lions jacket that the male robbery suspect was wearing according to the BOL dispatches, (Pl.'s Resp. at 3-4) Officer Sielski was still suspicious because "you know [how witnesses are], I don't know if nobody knows the difference between" a Detroit Lions jersey and the jersey of another team. (Sielski Dep. at 9.)

By this time, Officer Sielski had called for backup, and additional Monroe police officers arrived on the scene. After exiting the van, Plaintiff entered the credit union, and Lewis went to an automotive store nearby. He returned to the van and backed it up in front of the credit union while she was still inside. (Pl.'s Resp. at 3; Abel Dep., Defs.' Mot, Ex. C at 8.) After Lewis moved the van, Lieutenant Abel of the Monroe police department used his patrol car to box the van in, approached Lewis, and ordered him out of the vehicle. (Abel Dep. at 8-9.) An initial visual search discovered a "black long gun with a scope" in the back of the van. (*Id.* at 9.) Lewis then gave consent for

4

Lieutenant Abel to search the vehicle, (Pl.'s Resp. at 3) and this physical search uncovered documentation indicating that Lewis was on parole. Lieutenant Abel also confirmed that the gun was, in fact, a pellet gun. (Pl.'s Resp. at 3; Abel Dep. at 9-10.) Monroe officers arrested Lewis for violating the terms of his parole by being in possession of a firearm, but Plaintiff was not detained, as officers had nothing to charge her with. (Abel Dep. at 16.)

Lieutenant Abel then contacted Monroe County central dispatch and had them relay a message to Sumpter Township's police department that Monroe police had a black male in custody who was 5' 10" tall and weighed 190 pounds, but that they released a black female, 5' 7" tall, weighing 220 pounds and wearing a "white and red jersey style shirt." (Pl.'s Resp., Ex. 10.) Later, Lieutenant Abel talked directly with Defendant Cox about the incident, and testified that he initially told Defendant Cox the weapon was a "blank (sic, black?) long gun with a scope," but believes that he later said the weapon was a pellet gun. (Abel Dep. at 13-14.)

Officer Lange of Sumpter Township's police department was the officer who typically prepared search warrants, but he was off duty on the day following the robbery. As a result, Defendant Cox contacted Officer Lange at home to obtain a sample search warrant as well as the phone numbers of the on-call prosecutor and judge. (Lange Dep., Defs.' Mot., Ex. Q at 6-7.) Defendant Cox prepared the search warrant, which stated:

> On 09-02-2005 at 0930 Hours, an armed robbery occurred at 25622 Sumpter Rd. Upon arrival, the male and female suspects had fled the scene with approximately six to seven thousand dollars in cash and checks. Officer Cox then retrieved the V.H.S. surveillance tape from the location. The tape showed a black male with an orange hood and Detroit [L]ions jacket holding

5

> a possible A.K. rifle, and a black female wearing camouflage pants holding a silver hang (sic) gun.
>
> The video also showed the suspects arriving and fleeing the scene in [a]n early nineties Chevrolet [C]amaro white in color, with a red deck lid. Officer Cox then issued a B.O.L. through L.E.I.N. advising area departments [o]f the incident.
>
> At approximately 1400 Hours Officer Cox was contacted by the Monroe City Police Department. Per Lt. Able (sic) from the Monroe City Police Department, he believed that the male suspect, and suspect weapon were in custody based on the information given by the B.O.L. The male was with the female suspect at the time of arrest however, Monroe City Police allowed the female suspect to go free due to lack of information at the time of arrest. The female suspect advised the Monroe City Police that she resided at the above listed address.[4] The female suspect is believed to be Rebecca Mae Carthage 04-10-1962. The male suspect is believed to be Anthony Bernard Lewis 08-18-1962 residing at 10485 Tuttle Hill Rd. Maybe[e] Mi. 48159.

(Pl.'s Resp., Ex. 16.)

Once a judge signed the search warrant, a team of approximately seven Sumpter Township officers went to execute the warrant, led by Defendant Cox. All members of the team were equipped with ballistic vests and helmets. (Cox Dep. at 28-30.) Despite the fact that no arrest warrant was procured, one of the officers who executed the warrant states the team was told the robbery suspects would be arrested if they were present during the search. (Pl.'s Resp., Ex. 18 at 6.) Upon arriving at the search warrant location, officers found Fernando Carthage, Plaintiff's son, in front of one of the houses on the property. Officers handcuffed Mr. Carthage without incident, and he consented to a search of the vehicles on the premises as well as a pole barn. (Pl.'s Resp. at 6; Defs.' Mot. at 4-5; Mr. Carthage Dep., Defs.' Mot, Ex. P at 16.) Proceeding

---

[4]The search warrant listed a target address for Plaintiff of 10479 Tuttle Hill Rd., Maybee, Michigan 48159.

6

inside the first residence through an open door, officers found Plaintiff and her mother, along with a number of children. Plaintiff was also handcuffed without incident, and she consented to a search of the additional home on the property but told them there was a dog in that house. (Defs.' Mot. at 5; Ms. Carthage Dep., Defs.' Mot., Ex. E at 26-31.) Upon entering the second house, the dog charged and the officers fired their weapons, killing the animal. (Cox Dep. at 40.) Defendants' search of the property did not uncover any of the clothing that specifically matched what the suspects were described as wearing,[5] the alleged AK 47 used in the robbery, nor a white Camaro. (*Id.* at 44.) Officers did find a silver handgun and two pellet guns from the second residence, however. (Defs.' Mot., Ex. U.) Defendant Cox also mentioned that Plaintiff's polite demeanor during the search matched witness testimony about the female robbery suspect. (Cox Dep. at 42.)

    Plaintiff was then taken into custody for further questioning at the police station. Once there, officers had her sign a Constitutional Rights Certificate of Notification, (Pl.'s Resp., Ex. 21) and Plaintiff made a written statement about her and Lewis's whereabouts on the morning of the robbery. (Defs.' Mot., Ex. S.) Plaintiff was then released from custody. (Ms. Carthage Dep. at 43.) Three days after the search warrant was executed, Defendants determined that the pellet gun seized from the van did not match the robbery weapon, and that the credit union's surveillance tapes confirmed

---

[5]Officers never found any camouflage pants, a red fleece jacket or a Detroit Lions jacket. While Defendant Cox's supplemental report following execution of the search warrant indicated that officers found "possible clothing also used in the robbery," these items were not given evidence tag numbers and there is no further description of what clothing items were actually seized. (Defs.' Mot., Ex. U.)

7

Plaintiff's clothing did not match that of the female robbery suspect. (Defs.' Mot., Ex. M.) Neither she nor Lewis were charged with the Willow Market robbery.

## II.  STANDARD OF REVIEW - MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III. ANALYSIS

### A. Claims against Defendant Cox

Plaintiff argues that Defendant Cox violated her Fourth Amendment rights by conducting an unlawful search and seizure because the search warrant lacked probable cause connecting her with the Willow Market robbery.

#### 1. Defendant Cox is not entitled to summary judgment

Plaintiff's claim under 42 U.S.C. § 1983 requires that she show "that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001). It is undisputed that Defendant Cox was a person acting under color of state law, so the only issue before the Court is whether Defendants violated Plaintiff's federal constitutional rights. While not precisely stated in Plaintiff's Response, it appears that she challenges both (1) the issuance of a search warrant in the first place, as well as (2) her arrest and subsequent questioning at the police station following Defendants' search of her property.

##### a. The deficiencies in Defendant Cox's search warrant affidavit negated probable cause

Plaintiff alleges that Defendant Cox lacked sufficient probable cause to request a search warrant without affirmatively misrepresenting the fact that the weapon seized from the van matched the AK 47 used in the robbery. She also claims that, if included, exculpatory information would have negated any probable cause here.

"Probable cause for a search warrant exists if 'the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be

9

searched.'" *Mays v. City of Dayton*, 134 F.3d 809, 814 (6th Cir. 1998) (quoting *Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir.1996)).  When a plaintiff challenges a police officer's statements supporting a search warrant, the Supreme Court's decision in *Franks v. Delaware*, 438 U.S. 154 (1978) provides the appropriate threshold that must be reached to maintain a viable claim on these grounds.  Under *Franks*, "a party may only challenge the veracity of an affidavit if that party can make a 'substantial preliminary showing that a false statement knowingly and intentionally or with reckless disregard for the truth, was included by the affiant in the warrant affidavit,' and that the allegedly false statement was necessary for a finding of probable cause."  *Mays*, 134 F.3d at 815 (quoting *Franks*, 438 U.S. at 155-56).  "If the party succeeds in meeting this burden, the party is entitled to a hearing to determine if a preponderance of the evidence supports the allegations of lack of veracity."  *Id.*

Furthermore, the court has distinguished a police officer's duties in the context of applying for a search or arrest warrant from those that apply once a case reaches the trial stage, as the latter situation imposes a "duty to disclose potentially exculpatory information."  *Mays*, 134 F.3d at 816.  This distinction arises because "the consequences of arrest or search are less severe and easier to remedy than the consequences of an adverse criminal verdict."  *Id.*  Lastly, an investigating officer may rely on information provided by other officers without verifying the underlying probable cause or reasonable suspicion for the statement.  *Wolf v. Winlock*, 34 F. App'x 457, 462 (6th Cir. 2002) (citing several Supreme Court cases).

Plaintiff focuses on two other Sixth Circuit opinions, however.  First, she cites the recent case of *Gregory v. City of Louisville*, 444 F.3d 725, 743 (6th Cir. 2006) to support

10

a position that "the existence of probable cause is a question of fact" for the jury.  In addition, Plaintiff points to part of the holding in *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 305 (6th Cir. 2005), and cited in *Gregory*, which notes that "an officer cannot look only at the evidence of guilt while ignoring all exculpatory evidence.  Rather, the officer must consider the totality of the circumstances, recognizing both the inculpatory *and* exculpatory evidence, before determining if he has probable cause to make an arrest." (Emphasis in original.)  This final language from *Radvansky* serves to distinguish that case from the instant dispute involving a search warrant, as the court was presented with an issue of improper *warrantless* arrest, and not the allegedly improper search warrant at issue here.  Therefore, Plaintiff's citation to *Radvansky* is not applicable to issues surrounding Defendants' procurement of a search warrant.

    *Gregory* is also distinguishable, despite the fact that part of the court's concern was that officers and other investigators disregarded exculpatory evidence prior to charging the defendant in that case.  There, Gregory was charged with rape and eventually convicted.  DNA evidence later exonerated him after he served seven years in prison, and Gregory sued for wrongful arrest and prosecution.  The alleged misconduct persisted beyond Gregory's arrest phase, and permeated the entire trial as well.  *Gregory*, 444 F.3d at 731-36.  Under the reasoning of *Mays*, the fact that *Gregory* involved wrongful conduct at trial would lead to additional concern that the exclusion of evidence and the police officer's omissions had a direct influence on his eventual guilt in addition to his initial arrest.  As the instant case involves only an allegedly wrongful search and subsequent arrest, *Gregory's* holding becomes less applicable here.  Secondly, the *Gregory* court did not address the issue of wrongful arrest on the merits,

11

finding that it lacked jurisdiction to even hear the appeal on this point in the first place. The court held that Gregory was actually challenging the district court's finding that a reasonable factual dispute existed regarding whether officers had probable cause to arrest him, and not the lower court's denial of partial immunity for the officers. Therefore, the Sixth Circuit found that the case did not present a proper situation for an interlocutory appeal. *Id.* at 743-44. For these reasons, *Gregory's* broad statement that "[i]n a § 1983 action, the existence of probable cause is a question of fact," is not applicable to the instant case. *Id.* at 743.

Admittedly, the relatively high burden of production on Plaintiff under *Franks* conflicts somewhat with the fact that this Court is bound to construe any disputes of material facts in Plaintiff's favor when addressing Defendants' motion for summary judgment. Recognizing this potential tension, the Court will proceed to consider Plaintiff's claim that Defendant Cox misrepresented the fact that Monroe police officers recovered the alleged robbery weapon along with Lewis when they placed him under arrest.

In the flurry of dispatches and phone calls between Sumpter Township and Monroe police officers on the day of the robbery, several apply in determining the extent of Defendant Cox's intent or recklessness in making this statement. First, the BOL dispatches from Sumpter Township officers were consistent in reporting the robbery weapon as an AK 47, which is distinguishable from other types of weapons due to its distinctive curved magazine. Once Monroe police officers had Lewis in custody, they issued the following communication to Sumpter Township officers, apparently at 2:30 p.m. on September 2:

12

> [I]n reference to your RA earlier..we have 1 in custody. B/M, 5'10", 190lbs.. B/F [wa]s released described as 5'7", 220lbs, had a white and red jersey style shirt. [Th]ey were in a light colored conversion van. Both had good ID. B/M is out of t (sic) [O]ur suspect is Anthony Lewis..

(Pl.'s Resp., Ex. 10 (missing letters due to binding of exhibits added).) Notably, this dispatch mentioned nothing about the pellet gun recovered from the van.

Defendant Cox then had several phone conversations with various Monroe police officers, including Lieutenant Abel, as well as the local Monroe prosecutor. (Cox Dep. at 19-20.) He could not recall whether these calls occurred on the day of the robbery or the following day. (*Id.* at 20.) Lieutenant Abel's deposition testimony regarding his conversations with Defendant Cox, in relevant part, was that:

> A. [I b]asically explained who we had, if Mr. Lewis was the suspect. I gave [Defendant Cox] a description of the long gun that we confiscated.
>
> Q: What did you tell him?
>
> A: Just as described here; blank (sic, black?) long gun with a scope. There was discussion of a magazine, and I said no, no magazine, nothing exposed, such as that.
>
> Q: Did you tell [Defendant Cox] it was a pellet gun?
>
> A: I told him afterwards that we had confiscated a pellet gun, I believe.

(Abel Dep. at 13-14.) Lieutenant Abel is not able to definitively say whether he told Defendant Cox about the pellet gun during the first conversation, however, as it might have been during one of the subsequent times the two officers talked:

> Q: In your discussions with [Plaintiff's attorney earlier in this deposition] about your conversation with Cox, your first conversation, [Plaintiff's attorney] had asked you whether or not you told him – him being Officer Cox – that it was a pellet gun, and you told him – and I think I wrote it down accurately, you told [Cox] afterwards that you confiscated the pellet gun. Did you tell [Cox] that in your first conversation when you said afterwards, or were you referring to a second conversation?

13

>A: I couldn't tell you at this moment.
>
>Q: Is it fair to say that you have no recollection as you sit here today as to whether in your first conversation with Cox that you told him it was a pellet gun?
>
>A: Yes.  That's a fair assessment.

(Abel Dep. at 18-19.)   Finally, Lieutenant Abel indicated that he would not have confused the pellet gun recovered from Lewis's van with an AK 47.  (*Id.* at 17.)

Regardless of Lieutenant Abel's uncertainty regarding whether he told Defendant Cox that the gun found in Lewis's van turned out to be a pellet gun, he testifies that Defendant Cox specifically questioned him regarding the existence of an external magazine.  In response, Lieutenant Abel stated that there was no magazine on the gun found in the van.  Thus, viewing the evidence in a light most favorable to Plaintiff, Defendant Cox knew that the weapon found with Lewis did not match the type of weapon that he viewed on the Willow Market surveillance tape prior to seeking the warrant to search Plaintiff's home.  It is then possible to conclude that Defendant Cox recklessly disregarded the truth when he stated in the warrant affidavit that "[p]er Lt. Able (sic) from the Monroe City Police Department, [Lieutenant Abel] believed that the male suspect, and *suspect weapon* were in custody," (Pl.'s Resp., Ex. 16 (emphasis added)) since Defendant Cox knew that the weapon recovered did not match the robbery weapon due to its lack of a distinctive external magazine.  On this reading of the facts, in a light most favorable to Plaintiff, Defendant Cox has not shown that there is no material issue of fact that he did not act with reckless disregard for the truth when he stated in stating that Monroe police had recovered the suspected robbery weapon.

Once the statement about the robbery weapon is removed from Defendant Cox's

warrant affidavit, he no longer had probable cause to request the warrant, because the only connections between Plaintiff and the female suspect were her race, being slightly overweight and happening to be in the general vicinity of the robbery.  Such information is of too general a nature to implicate Plaintiff as a suspect in the robbery, so Defendant Cox is not entitled to summary judgment on this issue.

It is not necessary to consider Plaintiff's alternative claim that Defendant Cox did not have probable cause due to the omission of exculpatory facts from the affidavit, as the misrepresentation of information provides a sufficient independent ground to invalidate the search warrant.  For the same reason, Plaintiff still has a claim related to her arrest subsequent to execution of the search warrant, as the silver handgun recovered during the search was the only additional item to support probable cause of Plaintiff's arrest.  If the initial search is determined to be invalid, then this additional information obtained during the search would have to be suppressed as well, and probable cause for the arrest would no longer exist.

### B. Qualified Immunity

Alternatively, Defendant Cox argues that he is entitled to summary judgment because of qualified immunity.  Such a defense will protect "government officials performing discretionary functions" by "shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  The right must be a clearly established one in order to deny an official the qualified immunity defense.  *Id.* at 640.  When requesting the issuance of a warrant, "[d]efendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer

would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The right of a citizen to be free from a police officer applying for a warrant without having probable cause to do so is a clearly established right. The Court does not believe that a reasonably competent officer would issue a search warrant based solely upon the fact that an individual's race, body size and general location coincided with the features of a suspect, especially in light of the exculpatory information available here. Namely, that Plaintiff's and Lewis's clothing did not match those of the robbery suspects, the getaway vehicle was not a white van, the gun in the back of the van was lacking an external magazine, and Monroe police officers did not find any specific items to tie Plaintiff and Lewis to the robbery when they were stopped outside the credit union. For this reason, Defendant Cox is not entitled to qualified immunity on these facts.

### C.  Defendant Sumpter Township's Liability

A municipality is not vicariously liable for § 1983 claims arising out of the actions of its municipal employees. *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 691 (1978).  Rather, a § 1983 plaintiff must show that some custom or policy of the municipality existed that allowed the constitutional violation to occur. *Id.* at 690-91.  The Sixth Circuit has interpreted this to mean that the plaintiff has to "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)).  In her brief to this Court, Plaintiff does not make any showing that

16

Defendant Cox's actions were the result of any policy or custom within the Sumpter Township police department. She has not cited any past incidents of this type of behavior that might indicate such a custom, nor has she shown a connection between this and her alleged injuries. Plaintiff has merely argued that "Sumpter Township should have known that a police officer would wrongfully exclude exculpatory information in a search warrant request given the lack of training and supervision accorded to officers." (Pl.'s Resp. at 14-15.) This is insufficient to meet the requirements under *Garner*, so Plaintiff's claims for municipal liability against Defendant Sumpter Township must be dismissed as a matter of law.

## IV.  CONCLUSION

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders as follows: Defendants' motion for summary judgment is GRANTED IN PART as to Defendant Sumpter Township and DENIED IN PART as to her claims against Defendant Cox. As a result, Plaintiff's remaining claim is against Defendant Cox only, and arises from his allegedly improper search and seizure for lack of probable cause.

SO ORDERED.

s/Nancy G. Edmunds  
Nancy G. Edmunds  
United States District Judge

Dated:  March 20, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 20, 2007, by electronic and/or ordinary mail.

                                                    s/Carol A. Hemeyer
                                                  Case Manager